**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 11-44812 -MSH |
| CARLOS ROBERTO SILVEIRA AND | ) | |
| FABIANA RIBEIRO SOUZASILVEIRA | ) | |
| a/k/a  FABIANA RIBEIRO SOUZA- | ) | |
| SILVEIRA | ) | |
| | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| CARLOS ROBERTO SILVEIRA AND | ) | |
| FABIANA RIBEIRO SOUZASILVEIRA | ) | |
| | ) | |
| Plaintiffs | ) | Adversary Proceeding |
| | ) | No.  12-4036 |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., VANESSA | ) | |
| NIXON AND MICHELLE MOREIRA | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER ON MOTION OF DEFENDANT
WELLS FARGO BANK, N.A. TO DISMISS**

Defendant, Wells Fargo Bank, N.A., seeks dismissal of four counts of a five count

verified amended complaint filed by plaintiffs, Carlos Roberto Silveira and Fabiana Robeiro

Souzasilveira, who are the debtors in the main case. Those counts hinge on two claims: first, that

the foreclosure of the mortgage on their home conducted by Wells Fargo was invalid and second,

that Wells Fargo failed adequately to respond to the Siveiras' qualified written request ("QWR")

under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), as

1

amended by Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No.

111-203 § 1463(c).

## Facts

In ruling on a motion to dismiss, I must assume that the allegations in the complaint are

true. Here, the relevant allegations are as follows.

On or about February 28, 2005, the Silveiras bought a building located at 90 Southville

Road in Southborough, Massachusetts consisting of a residence for them and a pizzeria. In order

to purchase the property, the Silveiras borrowed $375,956 from Wells Fargo and secured their

repayment obligation with a mortgage on the property. Not long after they purchased the

property the economy began its downward spiral and even though they were current on their

payments to Wells Fargo, the Silveiras decided to seek a loan modification to reduce their

monthly mortgage payments. On or about September 29, 2009, they and Wells Fargo executed a

loan modification agreement. The agreement, which is captioned Loan Modification Agreement,

refers to an FHA case number and bears the notation "HUD Modification Agreement." By this

point the Silveiras were no longer current because the loan modification agreement added

$30,666.17[1] to the outstanding principal balance of their loan thus increasing the principal to

$382,972.03. The new principal amount resulted in a $260 increase in the Silveiras' monthly

mortgage payment.

Sometime in the spring of 2009, the Silveiras met defendant Vanessa Nixon who offered

to help them negotiate a new loan modification agreement with Wells Fargo.[2] Ms. Nixon, who

---

[1] Wells Fargo described this amount as overdue payments.

[2] It is unclear when Ms. Nixon actually began to advise the Silveiras with respect to obtaining a

is not an attorney, instructed them to stop making the payments called for under the existing loan modification agreement. Relying on Ms. Nixon's advice, the Silveiras ceased making payments.

Also around the spring of the same year, Ms. Souzasilveira, accompanied by her daughter, traveled to Brazil for medical treatment. For the next year or so Mr. Silveira traveled between Massachusetts and Brazil several times to visit his wife and child. In September 2010, Mr. Silveira gave Ms. Nixon a durable power of attorney so she could continue to negotiate a new loan modification and, if necessary, file bankruptcy on his behalf. The complaint does not state that Ms. Souzasilveira also granted Ms. Nixon a power of attorney but I take judicial notice of the Silveiras' admission in their opposition to a separate motion to dismiss of defendant Moreira that both of the Siveiras executed valid powers of attorney. Ms. Nixon, acting pursuant to the durable powers of attorney, hired defendant Michelle Machado Moreira, as the Silveiras' attorney. Attorney Moreira filed three petitions under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101 *et. seq.*) on behalf of the Silveiras while they were in Brazil. Each was filed without the Silveiras' knowledge. Each was dismissed for failure to file various documents.[3]

The Silveiras spoke with Ms. Nixon several times while they were in Brazil and during each conversation she assured them that "everything was fine." While the Silveiras were in Brazil, they were also in frequent communication with Wells Fargo, either personally or through their agents, defendants Nixon and Moreira. There is nothing in the amended complaint to

---

loan modification. Her advising them in the spring of 2009 is inconsistent with the fact that the original loan modification was executed in September 2009, well after the spring. This discrepancy is not material to the issues currently before me, however.

[3] The first case was filed on March 3, 2011 and dismissed on March 11, 2011; the second was filed on April 15, 2011 and dismissed on April 28, 2011. The third and final case filed by Ms. Moreira was filed on June 3, 2011. It was dismissed on July 19, 2011.

indicate that the Silveiras, Ms. Nixon or Ms. Moreira informed Wells Fargo that the Silveiras were residing, even temporarily, in Brazil.

On June 3, 2011, while the Silveiras were still in Brazil, Wells Fargo foreclosed its mortgage on the Southborough property by exercising its statutory power of sale and by making entry.[4] As it represented in a motion for relief from stay filed in the main case, Wells Fargo purchased the Southborough property at the foreclosure sale. Wells Fargo's certificate of entry was executed by John McCarthy as its attorney-in-fact under a power of attorney dated July 21, 2011, which was more than one month after Mr. McCarthy conducted the foreclosure.

In August 2011, Mr. Silveira returned home from Brazil. In his mail was a notice informing him that the post office was holding certified mail addressed to him.[5] When he went to retrieve it, he was informed that due to the passage of time the certified mail had been returned to the sender, which the Silveiras believe was either Wells Fargo or its attorneys.[6]

On November 17, 2011, the Silveiras filed the joint chapter 13 petition instituting this case. On April 3, 2012, Wells Fargo, alleging that it had purchased the Southborough property at the foreclosure sale for $428,163.43, sought relief from the automatic stay provisions of the

---

[4] According to Wells Fargo's motion for relief from stay filed in the main case, the foreclosure was conducted on June 3, 2011 at 3:00 p.m—about one hour after the third case was commenced by the debtors. Whether the foreclosure was conducted before or after the filing of the third petition is of no consequence since the automatic stay under § 362 of the Bankruptcy Code did not arise upon the filing of the third petition. 11 U.S.C. § 362(c)(4). Subsequently, in the current case, I imposed the automatic stay thus making it necessary for Wells Fargo to seek relief from stay to commence eviction proceedings against the Silveiras.

[5] The amended complaint says nothing of any letter that may have been addressed to Ms. Silveirasouza.

[6] What was in the certified mail is unclear. At various points the Silveiras suggest it contained either the notice of acceleration and right to cure their default required by MASS. GEN. LAWS. ch. 244, § 35A or the foreclosure notice required by MASS. GEN. LAWS. ch. 244, § 14.

Bankruptcy Code to commence eviction proceedings against the Silveiras. On April 17, 2012,

the Silveiras filed an opposition to the motion for stay relief and attached what they claim was a

QWR, which included a demand under MASS. GEN. LAWS ch. 93A.[7] The QWR was dated April

17, 2012. The record does not indicate when the QWR was received by Wells Fargo but by letter

dated May 14, 2012, Wells Fargo acknowledged receipt of the QWR. On July 10, 2012, it

responded to the QWR questioning whether it actually constituted a QWR, but enclosing copies

of certain requested documents.[8] Also on April 17, 2012, the Silveiras commenced this adversary

proceeding and so I consolidated it with the motion for relief from stay. Wells Fargo sought and

obtained dismissal of the original complaint but I granted the Silveiras' leave to amend their

complaint, which they did. The amended complaint is now the subject of Wells Fargo's second

motion to dismiss.

### Applicable Notice Requirements

Massachusetts law requires that before a foreclosure can occur the mortgagee must

deliver certain notice to the mortgagor and prescribes both the manner and timing of such notice.

MASS. GEN. LAWS ch. 244, § 35A, which was added by St. 2007, ch 206, § 11 and which

became effective on May 1, 2008, *see* St. 2007, ch. 206 § 21, requires a mortgagee who, because

of a payment default, wishes to accelerate a note secured by a consumer residential mortgage not

---

[7] Chapter 93A is the Massachusetts Consumer Protection Act which makes any unfair or
deceptive act or practice unlawful and can subject the violator to double or treble damages plus
attorneys' fees. A demand letter giving the alleged target thirty days to respond generally is
required before an individual consumer may commence a lawsuit under chapter 93A. MASS.
GEN. LAWS ch. 93A, § 2 and § 9.

[8] The Silveiras alleged that Wells Fargo did not respond to the QWR but a copy of the response
was attached to Wells Fargo's motion to dismiss. They now assert that the response was
inadequate.

5

only to inform the mortgagor of the mortgagee's intent to accelerate the note but also to provide

the mortgagor with information regarding his right to cure the default or obtain assistance in

dealing with his defaulted loan. When § 35A was enacted, it stayed for at least ninety days from

the date of notice  the mortgagee's right to accelerate the unpaid balance of a note.

Section 35A was amended by Acts 2010, ch. 258, §§ 7 and 8, effective on August 7,

2010.[9] Among other things, the notice period was extended from ninety to one hundred fifty

days.[10] Also, the required information to be included in the notice was expanded to include

advising the mortgagor of his right to sell the mortgaged property and of his right, in appropriate

instances, to seek a loan modification and warning him that he could be evicted from his home

after foreclosure.[11] Prior to the enactment of § 35A, a mortgagee could foreclose by entry under

---

[9] Neither party identifies which version of § 35A applies although Wells Fargo states in its memorandum that § 35A was "recently amended" and that those amendments do not apply to this case. The recent amendments to which Wells Fargo may be referring, however, could be those changes to chapter 244, § 14 and the addition of § 35B and § 35C to the chapter made by chapter 194 of the Acts of 2012, which was adopted on August 3, 2012. Those changes are clearly not applicable. It is the version of § 35A as it existed in June 2011 that is applicable here.

[10] MASS. GEN. LAWS ch. 244, § 35A(g) provides in relevant part:

> The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (b) by any method authorized by this chapter or any other law until at least 150 days after the date a written notice is given by the mortgagee to the mortgagor….

[11] MASS. GEN. LAWS ch. 244, § 35A(h) provides in relevant part:

> The notice required in subsection (g) shall inform the mortgagor of the following:--

> (1) the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default;

MASS. GEN. LAWS ch. 244, § 1 without giving his mortgagor notice of his intent to foreclosure.

---

(2) the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 150 days after service of the notice and the name, address and local or toll free telephone number of a person to whom the payment or tender shall be made unless a creditor chooses to begin foreclosure proceedings after a right to cure period lasting less than 150 days that engaged in a good faith effort to negotiate and agree upon a commercially reasonable alternative but was not successful in resolving the dispute, in which case a foreclosure or other action to seize the home may take place on an earlier date to be specified;

(3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in the property by a foreclosure proceeding or other action to seize the home;

(4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default;

(5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property;

(6) that the mortgagor may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency, and the local or toll free telephone numbers the mortgagor may call to request this assistance;

(7) that the mortgagor may sell the property prior to the foreclosure sale and use the proceeds to pay off the mortgage;

(8) that the mortgagor may redeem the property by paying the total amount due, prior to the foreclosure sale;

(9) that the mortgagor may be evicted from the home after a foreclosure sale; and

(10) the mortgagor may have the following additional rights, depending on the terms of the residential mortgage: (i) to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debtor; and (ii) to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure.

The notice shall also include a declaration, in the language the creditor has regularly used in its communication with the borrower, appearing on the first page of the notice stating: "This is an important notice concerning your right to live in your home. Have it translated at once."

*CRBJ, LLC v. Millien*, No. 353549KCL, 2008 WL 2891004 (Mass. Land Ct. July 29, 2008).

Section 35A contains no exception for foreclosure by entry so the notice mandated by § 35A

must be given to a mortgagor before foreclosure by sale or by entry can occur.

Only after the notice of acceleration and right to cure (the "§ 35A notice") is sent and the

required time has elapsed without any action by the mortgagor may a mortgagee commence an

action in state court under the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501 *et seq.*

("SCRA"), which is a prerequisite to most residential mortgage foreclosures in Massachusetts.[12]

As part of this action, the mortgagee must file an affidavit certifying compliance with § 35A.

MASS. GEN. LAWS ch. 244, § 35A(j).[13]

Upon receipt of an order in the SCRA proceeding the mortgagee may issue notice of the

actual foreclosure sale. Such notice must be given by publication and by registered mail in

accordance with MASS. GEN. LAWS ch. 244, § 14 which provides in relevant part:

> no sale under such power shall be effectual to foreclose a mortgage, unless, previous to
> such sale, notice thereof has been published once in each of three successive weeks, the
> first publication to be not less than twenty-one days before the day of sale, in a
> newspaper, if any, published in the town where the land lies or in a newspaper with
> general circulation in the town where the land lies and notice of the sale has been sent by
> registered mail to the owner or owners of record of the equity of redemption as of 30
> days prior to the date of sale, said notice to be mailed by registered mail at least 14 days
> prior to the date of sale to said owner or owners to the address set forth in section 61 of
> chapter 185, if the land is then registered or, in the case of unregistered land, to the last

---

[12] Massachusetts is a non-judicial foreclosure jurisdiction so the action to determine whether a
mortgagor is entitled to the protection of the SCRA is generally the only judicial involvement in
the foreclosure process.

[13] MASS. GEN. LAWS ch. 244, § 35A(j) provides:

> A copy of the notice required by this section and an affidavit demonstrating compliance
> with this section shall be filed by the mortgagee, or anyone holding thereunder, in any
> action or proceeding to foreclose on such residential real property.

8

address of the owner or owners of the equity of redemption appearing on the records of the holder of the mortgage, if any, or if none, to the address of the owner or owners as given on the deed or on the petition for probate by which the owner or owners acquired title, if any, or if in either case no owner appears, then mailed by registered mail to the address to which the tax collector last sent the tax bill for the mortgaged premises to be sold, or if no tax bill has been sent for the last preceding 3 years, then mailed by registered mail to the address of any of the parcels of property in the name of said owner of record which are to be sold under the power of sale…

MASS. GEN. LAWS ch. 244, § 17B imposes an additional notice requirement that is applicable if the mortgagee intends to pursue a claim against the mortgagor for any deficiency resulting after a foreclosure sale has taken place. In such instances the mortgagee must provide the mortgagor with notice of its intent to pursue a deficiency "not less than twenty-one days before the date of the sale under power in the mortgage."

### Positions of the Parties

The Silveiras' amended complaint is not a model of clarity and their alleged causes of action, particularly, are often difficult to pinpoint. In count I of the amended complaint, the Silveiras allege that the foreclosure was invalid. Citing *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708 (2006), the Silveiras argue that Wells Fargo violated their due process rights by foreclosing on the Southborough property when Wells Fargo knew or should have known they did not have actual notice of the foreclosure. According to the Silveiras, Wells Fargo's foreclosure was also ineffective because the power of attorney given to Mr. McCarthy to conduct the sale and to make entry was signed more than one month after the sale and his entry.  In their opposition to Wells Fargo's motion to dismiss, the Silveiras challenge Wells Fargo's foreclosure by entry because Wells Fargo's "peaceable possession" did not continue for three years. Similarly, the Silveiras

9

challenge whether and how Wells Fargo could have certified to the Massachusetts Land Court

that it had sent the required § 35A notice when Wells Fargo knew or should have known that the

Silveiras did not actually receive the notice. The Silveiras allege that as a matter of due process,

merely mailing the notice is insufficient, and if the notice is returned to the sender, it is as if the

notice was never sent.[14] The Silveiras also assert in count I that Wells Fargo may have violated

MASS. GEN. LAWS ch. 244, § 17B because it failed to provide them with at least 21 days' notice

of its intent to collect any deficiency arising after the sale. Moreover, they accuse Wells Fargo of

"dual tracking," that is, pursuing foreclosure while also considering their second loan

modification request.

The allegation of dual tracking also forms the basis for the Silveiras' Chapter 93A claim

which is scattered between counts I and II of the amended complaint. Dual tracking, along with

the fact that the first loan modification agreement increased the Silveiras' monthly payments,

also serves as a basis for their claim asserted in count II that Wells Fargo violated its duty of

good faith and fair dealing.

In count III the Silveiras assert that Wells Fargo breached the various loan documents,

including the first modification agreement, because Wells Fargo was required to provide them

with the § 35A notice and either did not send such notice or, in the alternative, knew that they

had not received it.[15]

---

[14] As noted below, the Silveiras also alleged that the § 35A notice may never have been sent.

[15] Count III of the amended complaint addresses the contractually required notices which the
parties assume include those required by statute. In light of the parties' assumption that § 35A is
applicable, I need not address whether it has been preempted by federal law. *See Sloane v.
JPMorgan Chase Bank, N.A.*, 12-11355-GAO, 2012 WL 7806163, 1 (D. Mass. March 27, 2012)
("Section 35A expressly limits 'the circumstances under which a loan may be called due' and

Count V asserts violations of RESPA based upon Wells Fargo's failure to respond to the combined QWR/Chapter 93A demand letter and alleges that Wells Fargo has exhibited a pattern and practice of ignoring QWRs. In their opposition to Wells Fargo's motion to dismiss, the Silveiras acknowledge that Wells Fargo did respond to the QWR and that the response was timely sent to their prior counsel. They continue to press the RESPA claim, however, arguing that Wells Fargo's response was inadequate.

Wells Fargo asserts that the four counts of the amended complaint seeking relief against it should be dismissed under Fed. R. Civ. P 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, because its foreclosure by right of entry was properly performed by an individual with apparent authority whose acts were ratified after the fact and even if its foreclosure by right of entry was invalid, a valid foreclosure was also accomplished by the proper exercise of Wells Fargo's power of sale. Arguing that MASS. GEN. LAWS ch. 244, § 14 and § 35A require only that notices be sent,[16] Wells Fargo maintains that the Silveiras' lack of

---

regulates the 'term to maturity of the loan' by imposing requirements applicable to acceleration of mortgage loans. *See, e.g.,* § 35A(b), (g). Such state regulation of a national bank is expressly preempted."). In any event, as discussed later in this memorandum, federal regulations incorporated in the relevant loan documents in this proceeding include HUD regulations which also require various notices, including a notice of acceleration. And because no party has raised it, I need not address whether given that the mortgaged property is not purely residential as it includes both the Silveiras' residence and a pizzeria, § 35A even applies.

[16] Section 35A(g) requires that the mortgagee provide written notice of acceleration of a mortgage obligation to the mortgagor and states in pertinent part:

> Said notice [of acceleration of the note] shall be deemed to be delivered to the mortgagor: (i) when delivered by hand to the mortgagor; or (ii) when sent by first class mail and certified mail or similar service by a private carrier to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

actual receipt of the notices is irrelevant. Further, because it is a private actor, Wells Fargo

asserts that lack of actual notice did not violate the Silveiras' due process rights. Wells Fargo

does not challenge the applicability of § 35A to this proceeding.

Wells Fargo also asserts that its offering a loan modification which capitalized overdue

payments and increased the Silveiras' monthly payment, which the Silveiras accepted, is neither

a violation of Chapter 93A nor a breach of the covenant of good faith and fair dealing. Wells

Fargo maintains that under its loan documents the only notice required to be given to the

Silveiras was notice of an impending foreclosure. As to the § 35A notice, although Wells Fargo

offers no evidence that it sent such a notice, it argues that the Silveiras cannot deny that the §

35A notice was sent because they acknowledge that they were informed of an attempted delivery

of certified mail.[17] Thus, according to Wells Fargo, there was no breach of any agreement even if

the Silveiras did not actually receive the notice. Finally, Wells Fargo notes that the Silveiras'

assertion that it did not respond to the QWR is factually incorrect. The Silveiras agree that a

response was sent although they challenge the adequacy of the response.

### Motion to Dismiss Standards

The court may dismiss a complaint for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012.

In deciding a motion to dismiss "a court must take the allegations in the complaint as true and

must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3

(1st Cir. 1993). To avoid dismissal of a claim under Rule 12(b)(6), a plaintiff must plead "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[17] Wells Fargo did not address § 35A's requirement that an acceleration notice also be sent by
first class mail.

12

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

(2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007)). It is not enough to speculate as to the facts or simply allege the elements of a claim.

*Id.* A court is "not bound to accept legal conclusions couched in fact." *In re Di Vittorio,* 430 B.R.

26, 44 (Bankr. D. Mass. 2010). Nor should a court give credence to any "fact" which has been

"conclusively contradicted by plaintiffs' concessions or otherwise." *Chongris v. Bd. of Appeals*

*of Town of Andover,* 811 F.2d 36, 37 (1st Cir. 1987).

      Here the parties have attached additional documents to the motion to dismiss and the

opposition thereto. Those documents consist of copies of the Wells Fargo note and mortgage, the

loan modification agreement, the certificate of entry, the power of attorney, the QWR and the

response thereto. These documents may fairly be seen as incorporated by reference in the

amended complaint and as such do not require abandoning the motion to dismiss standard in

favor of one for summary judgment.

> When deciding a motion to dismiss, a court "is generally limited to considering facts and
> documents that are part of or incorporated into the complaint." *Trans–Spec Truck Serv.,*
> *Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008). "A court may also consider a
> limited universe of materials not included in or attached to the complaint, such as
> documents incorporated by reference in [the complaint], matters of public record, and
> other matters susceptible to judicial notice." *In re Bailey,* 437 B.R. 721, 727 (Bankr. D.
> Mass. 2010) (internal citations and quotation marks omitted).

*Nickless v, HSBC Bank USA, National Association (In re Marron)*, 462 B.R. 364, 370-71 (Bankr.

D. Mass. 2012).[18]

## Discussion

**Count I: The Validity of the Foreclosure Sale**

---

[18] An adjustable rate rider was also included among the documents. It is not referenced in the
complaint, however, so I have not considered it in ruling on the motion to dismiss.

There are four ways to foreclose a mortgage under Massachusetts law: (1) by peaceable entry (which must continue for three years to eliminate the mortgagor's right to redeem the equity) and recording a certificate of entry (which begins the running of the three year period), MASS. GEN. LAWS ch. 244, §§ 1, 2; (2) by sale under a statutory power of sale if provided for in the mortgage, MASS. GEN. LAWS ch. 244, §§ 11-15, 17; (3) by action, MASS. GEN. LAWS ch. 244, §§ 4-10; and (4) by a bill in equity, MASS. GEN. LAWS ch. 185, § 1(k). "The third method is seldom used and the fourth is available only in extraordinary circumstances." *Negron v. Gordon*, 373 Mass. 199, 206, 366 N.E.2d 241, 245 (Mass. 1977). Wells Fargo maintains that it conducted the mortgage foreclosure both by exercising its power of sale under the mortgage and by its peaceable entry onto the Silveiras' property. This belt and suspenders approach is typical in Massachusetts.

### Notice and Foreclosure Under the Statutory Power of Sale

The central issue to be determined in count I of the amended complaint is whether the certified mail notice, which the Silveiras assume was, or at least included, the notice of the foreclosure sale required by MASS. GEN. LAWS ch. 244, § 14, sent to Mr. Silveira at the Silveiras' address while they were out of the country[19] and which was returned to the sender before Mr. Silveira could retrieve it from the post office, constituted sufficient notice of the foreclosure sale.

The statutory power of sale is set forth in MASS. GEN. LAWS ch. 183, § 21.[20] Foreclosure under this power requires strict statutory compliance including those for notice. *Ibanez*, 458

---

[19] The complaint is silent as to any service on Ms. Souzasilveira by certified mail. Thus for the purpose of the motion to dismiss, I will assume that only Mr. Silveira is contesting notice.

[20]MASS. GEN. LAWS ch. 183, § 21 provides:

Mass. at 646. MASS. GEN. LAWS ch. 244, § 14, whose relevant text is quoted above, provides

that, in addition to notice by publication, notice of an impending foreclosure must be given to the

"owner or owners of record of the equity of redemption," in this case the Silveiras, by registered

mail at least fourteen days before the scheduled foreclosure sale.[21] The statute is silent as to

whether the notice must actually be received and two decisions of the Massachusetts Appeals

Court have reached opposite conclusions on this issue. *Compare Hull v. Attleboro Savings Bank,*

25 Mass. App. Ct. 960, 963, 519 N.E.2d 775 (1988), *review denied,* 402 Mass. 1102, 523 N.E.2d

267 (1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988) (receipt not

required), *with Mutual Bank for Savings v. Silverman,* 13 Mass. App. Ct. 1059, 1060–61, 434

N.E.2d 1027 (1982) (receipt required). The better reasoned analysis favors adoption of the

Massachusetts Appeals Court's later position articulated in *Hull. See Lindsey v. First Horizon*

*Home Loans,* Civil Action No. 11–10408–FDS, 2012 WL 689745, at *3 (D. Mass. March 1,

2012 ("[T]he statute does not contain any requirement that the holder of the mortgage ensure that

---

The following "power" shall be known as the "Statutory Power of Sale", and may be incorporated in any mortgage by reference:

(POWER.)

But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

[21] Registered mail includes certified mail. MASS. GEN. LAWS ch. 4, § 7.

the mortgagor receives actual notice of the sale. By its terms, it requires only that the notice 'has

been sent by registered mail' at the appropriate times to the appropriate addresses."); *Bailey v.*

*Wells Fargo Bank, N.A., (In re Bailey)*, 468 B.R. 464 (Bankr. D. Mass. 2012) ("The law in

Massachusetts is clear; the requirement that the notice be mailed to the owner of the relevant

property is satisfied by mailing and *nonreceipt is irrelevant.*) (internal quotation marks and

citation omitted; emphasis in the original). *See also* Real Estate Bar Association Title Standard

35 ("A foreclosure sale after September 14, 1975, is not defective of record if the mortgagee's

affidavit recites that notice of the sale was given by registered or certified mail in compliance

with M.G.L. c. 244, § 14, as amended….").

Citing the U. S. Supreme Court's decision in *Jones v. Flowers* the Silveiras argue that to

the extent Massachusetts law does not require actual notice of a foreclosure sale, it violates their

due process rights. They are mistaken. Due process requires "notice reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objection." *Mullane v. Central Hanover Bank & Trust Co.,* 339

U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The Constitution does not require that an

effort to give notice succeed. *See, e.g.*, *Dusenbery v. United States,* 534 U.S. 161, 122 S.Ct. 694,

151 L.Ed.2d 597 (2002). If it did, then people could evade knowledge, and avoid responsibility

for their conduct, by burning notices on receipt—or just leaving them unopened…." *Ho v.*

*Donovan*, 569 F.3d 677, 680 (7th Cir. 2009). Indeed, *Jones v. Flowers* acknowledges that "[d]ue

process does not require actual notice." *Jones v. Flowers*, 547 U.S. at 225.

Moreover, *Jones v. Flowers* arose in the context of a state actor, the Arkansas

Commissioner of State Lands, foreclosing on property to pay delinquent real estate taxes. Its

facts are readily distinguishable from the ones here. Mr. Jones, who owned property in Little

Rock, Arkansas, lived in the property for approximately twenty-five years but moved out when

he and his wife separated in 1993. She continued to reside in the Little Rock property and Mr.

Jones continued to pay the mortgage, which included an escrow for property taxes, until 1997

when the note secured by the mortgage was paid in full. Apparently Mr. Jones neglected to pay

the taxes directly to the city thereafter and the property was subsequently declared "delinquent."

In 2000 the Commissioner of State Lands sent a certified letter to Mr. Jones at the Little Rock

property address. The notice included information about the delinquency and Mr. Jones' right to

redeem the property. Specifically the notice stated that Mr. Jones had *two years* to exercise his

redemption rights. The letter went unclaimed and was returned to the Commissioner unopened

and marked "unclaimed." The Commissioner took no further action for almost the full two years

and then published a notice and solicitation of bids for the sale of the property in a local

newspaper. No bids were submitted thus enabling the Commissioner to sell the property at a

private sale. Several months after the unsuccessful public sale, Ms. Flowers submitted an offer of

$21,042.15 to purchase the property, which was worth $80,000. Upon receipt of Ms. Flowers'

offer, the Commissioner sent to Mr. Jones at the Little Rock property another certified letter

advising him of the impending sale and it too was returned to the Commissioner as unclaimed.

The Commissioner then sold the property to Ms. Flowers who promptly served an unlawful

detainer notice on Mr. Jones' daughter who apparently had taken up residence there. Ms. Jones

informed her father of the tax sale.

Mr. Jones, arguing that his due process rights were violated, unsuccessfully sued the

Commissioner and Ms. Flowers in state court. The judgment was affirmed by the Arkansas

17

Supreme Court but reversed by the U.S. Supreme Court in a five to three decision. Noting a split

of authority among federal courts and the highest courts of several states as to what a

*governmental entity* was required to do before depriving an individual of his property, the

Supreme Court concluded that in instances when the government is aware that its attempted

notice was ineffective its failure to undertake other reasonable actions that might provide actual

notice is a violation of due process. The Court concluded that the Arkansas Commissioner easily

could have posted a notice on the property and resent the same notice by first class mail. The

Court noted, however, that the state was not required to search phone books for Mr. Jones' new

address or undertake an "open-ended" search for the owner's current address.

Wells Fargo is not a governmental entity nor is any state action implicated in a non-

judicial foreclosure by sale or entry. As the Court of Appeals for the First Circuit has noted,

> [c]ourts which have examined the constitutional validity of such non-judicial foreclosures
> have almost uniformly found that they do not involve "state action" because, among other
> reasons: (1) state officials do not play any significant role (and often play no role at all) in
> the proceedings, and (2) the statutes which authorize "power of sale" foreclosures
> generally do not create the right or compel its exercise, but simply confirm and to some
> extent regulate a right which was recognized under common law and which exists in a
> given case by virtue of an agreement between the parties to the mortgage.

*Van Daam v. Chrysler First Financial Service Corp. of Rhode Island*, 915 F.2d 1557, 1990 WL

151385, at *2 (1st Cir.1990) (unpublished decision).

Moreover, the Silveiras admit that they, directly and through Ms. Nixon and Ms. Moreira,

whom they describe as their agents, were in frequent contact with Wells Fargo even while the

Silveiras were in Brazil. Yet there is no allegation any of them informed Wells Fargo that the

Silveiras were residing temporarily in Brazil; nor is there is any allegation that the Silveiras took

steps during this period to have their mail forwarded or to have Ms. Nixon monitor their mail. If

18

she was to act as their agent to obtain a loan modification, it would not be unreasonable to expect

that she would be on the lookout for mail from Wells Fargo or even that she would request that

such mail be sent to her until the Silveiras returned home. Under the relevant facts presented in

this adversary proceeding, Wells Fargo's foreclosure cannot be voided due to the Silveiras'

failure to receive notice.


**Foreclosure by Entry**

Wells Fargo contends that it also foreclosed by peaceable entry on to the property[22] and

that the actions of its agent, Mr. McCarthy, could be ratified after the fact and still be effective

under general principles of agency. While this may be true, Wells Fargo ignores the fact that in

order to foreclose the Silveiras' right of redemption by entry, in addition to sending the § 35A

notice, it must continue in "peaceable possession" for the three year period following the

recording of the certificate of entry. In *Singh v. 207-211 Main Street, LLC*, 78 Mass. App. Ct.

901, 902, 937 N.E.2d 977, 979-80 (2010), the Massachusetts Appeals Court, elaborated on the

scope of foreclosure by peaceable entry followed by peaceable possession:

> "[A]n entry is peaceable if not opposed by the mortgagor or person claiming the
> premises." *Thompson v. Kenyon,* 100 Mass. 108, 111 (1868). Once a peaceable entry has
> been made, "[i]t may be assumed in the absence of anything to the contrary that [the
> mortgagee's] possession was sufficiently peaceful to satisfy the ... statute." *Worcester v.
> Bennett,* 310 Mass. 400, 404, 38 N.E.2d 647 (1941). See *Joyner v. Lenox Sav. Bank,* 322
> Mass. 46, 53–57, 76 N.E.2d 169 (1947) (no waiver of entry to foreclose where mortgagee

---

[22] Mass. Gen. Laws ch. 244, § 1 provides in pertinent part "(a) mortgagee may, after breach of
condition of a mortgage of land, recover possession of the land mortgaged by an open and
peaceable entry thereon . . . ; and possession so obtained, if continued peaceably for three years
from the date of recording of the memorandum or certificate as provided in section two, shall
forever foreclose the right of redemption."

19

in possession acted consistently with intent to foreclose). If the mortgagor wants to challenge a foreclosure by entry, it is incumbent on him to do so before the three-year period has elapsed. See *Bennett v. Conant*, 64 Mass. 163, 10 Cush. 163, 166–167 (1852) (where mortgagor failed to "occupy or do acts of ownership," there was no interruption of peaceable possession).

Following its decision in *Bennett*, a case in which the mortgagor was not in possession, the Massachusetts Supreme Judicial Court clarified that a mortgagor's continued occupancy of the foreclosed property makes the mortgagor merely a tenant at sufferance and does not interrupt the mortgagee's peaceable possession. *Cunningham v. Davis*, 175 Mass. 213, 222, 56 N.E. 2 (1900).

The parties have not cited nor have I found any binding Massachusetts authority explaining how a mortgagee's peaceable possession may be rendered non-peaceable by a mortgagor in the context of a foreclosure by entry. In *Araserv v. Bay State Harness Horse Racing & Breeding Ass'n*, *Inc.*, 437 F. Supp. 1083 (D. Mass. 1977), the court concluded that a food concessionaire which also held a junior mortgage on a portion of real estate had not shown a likelihood of success on its claim that it remained in peaceable possession of the property. Although the mortgagee had made an entry on to a portion of the premises, the defednat mortgagors refused to accept that entry, changing the locks on the entrances and exits and barring the mortgagee from the premises. In *In re Ledgemere Land Corp.*, 116 B.R. 338 (Bankr. D. Mass. 1990)*,* the debtor sought an order directing a mortgagee in possession of the mortgaged premises to turn over rents it had collected. In rejecting the mortgagee's argument that it was in open and peaceable possession within the meaning of the MASS. GEN. LAWS ch. 244 §1, the court stated:

> The Bank's entry upon the premises, even though "open and peaceable," is not enough. The statute requires that the entry be followed by "possession ... continued peaceably ..." What followed its entry could hardly be called peaceable, with threats of eviction,

disputes over who should receive rents, and, finally, litigation.

*Id.* at 341. In *Powell v. Bagg*, 8 Gray 441, 1857 WL 5896 (1857), the court held that verbal

directions ordering defendant off plaintiff's property and forbidding defendant's entry on

plaintiff's property to make repairs to an aqueduct was evidence that plaintiff had interrupted

defendant's  adverse possession of a portion plaintiff's land. Like foreclosure by entry an

easement by adverse possession requires peaceable possession of the property for a period of

years.

At least one court outside Massachusetts has held that litigation instituted by a mortgagor

interrupts peaceable possession. *Thomas v. Brodsack*, 215 N.W.2d 503, 505 (Iowa 1974)

("Litigation relating to the right of possession will forestall or interrupt peaceable possession.")

(internal citations omitted).

I agree with the holdings in *Ledgemere* and *Thomas* and predict that the Massachusetts

Supreme Judicial Court would as well if presented with this issue. The commencement of this

adversary proceeding challenging Wells Fargo's asserted ownership of the property interrupts

Wells Fargo's peaceable possession thereof. Therefore, even if Wells Fargo could ratify Mr.

McCarthy's entry after the fact it has lost the right to foreclose the Silveira's right of redemption

through foreclosure by entry.

**Foreclosure Without Notice of Acceleration**

The Silveiras allege that the foreclosure is invalid because Wells Fargo either did not

send them a § 35A notice[23] or if it did send notice it was not received and Wells Fargo knew it.

---

[23] The allegation that Wells Fargo did not send a notice of acceleration is pled in count III of the amended complaint. In count I the Silveiras allege only that they did not receive the notice.

As to the latter allegation, for the reasons set forth above it fails to state a claim that the

foreclosure was invalid because, like notice of sale under MASS. GEN. LAWS ch. 244, § 14, notice

of acceleration and the right to cure is complete when *sent*.[24] MASS. GEN. LAWS ch 244, § 35A.

There is no requirement that it be received. *Id.* at § 35A(g). But the amended complaint asserts in

the alternative that notice was not sent at all. At this stage of the proceedings that allegation is

sufficient to withstand a motion to dismiss.

### Failure to Provide Notice of Intent to Collect Deficiency

The Silveiras seek to void the foreclosure because Wells Fargo failed to send a notice of

intent to collect a deficiency pursuant to MASS. GEN. LAWS ch. 244, § 17B. The failure to send

such a notice does not invalidate the foreclosure; it merely precludes a mortgagee from pursuing

the mortgagors to collect any shortfall remaining after the sale. *Sovereign Bank v. Sturgis,* 863 F.

Supp.2d 75, 81 (D. Mass. 2012) ("A foreclosure can be conducted properly without the

mortgagee sending a § 17B notice; it is only if the mortgagee wishes to preserve the right to

pursue a deficiency action that such a notice is necessary."). This claim incorporated into count I

of the amended complaint fails to state a claim as a matter of law as there is no allegation that

Wells Fargo has made any attempts or even a suggestion that it intends to pursue a deficiency

claim against the Silveiras.

### Count II: Breach of Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing is implied in every contract." *Uno Rests.,*

*Inc. v. Boston Kenmore Realty Corp.,* 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004). "The

---

[24] The complaint silent as to whether Wells Fargo sent an acceleration notice by first class mail *and* registered mail but for the purposes of the motion to dismiss, I will assume that the allegation that Wells Fargo knew or should have known that the acceleration notice was not received refers to both methods of mail.

covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Id.*

The Silveiras allege that they and Wells Fargo entered into a contract to consider the first loan modification and that Wells Fargo breached the implied covenant to act in good faith implicit in that contract by misleading them into believing that the first loan modification would help them when in fact it increased their total loan balance and monthly payment. The Silveiras claim is based on a faulty premise. There was no contract between them and Wells Fargo to "consider" a loan modification. Furthermore the Silveiras concede that they had received a statement from Wells Fargo indicating that they were in default and owed more than $30,000 in overdue payments when they entered into the loan modification. Wells Fargo was under no obligation to waive the arrearage or reduce the outstanding balance on the loan just as the Silveiras were under no obligation to enter into the modification. By entering the loan modification, however, even though the loan principal and monthly payment increased, the Silveiras received the valuable benefit of curing a default and being allowed to remain in their home. It is difficult to see that as a lack of good faith on the part of Wells Fargo.

The Silveiras also claim that by "dual tracking," namely proceeding with foreclosure while they were seeking the second loan modification, Wells Fargo breached its covenant of good faith and fair dealing. Although not all courts agree that dual tracking violates the covenant of good faith and fair dealing implied in the loan contract between a borrower and a lender, I

23

have previously ruled in the context of HAMP loan modifications[25] that it does. *Cruz*, 446 B.R. at 4 (finding substantial likelihood that the bank violated the covenant by dual tracking). *See also Orozco v. GMAC Mortg*., 11-11135-FDS, 2012 WL 4581092, at *6 (D. Mass. Oct. 1, 2012); *Blackwood v. Wells Fargo Bank, N.A.*,  10-10483-JGD, 2011 WL 1561024, at *5 (D. Mass. April 22, 2011). *But see Martins v. U.S. Bank, N.A.*, 11-11349, 2011 WL 4459135, at *1 n. 3 (D. Mass. Sept. 26, 2011). While the amended complaint is missing any direct allegation that the Silveiras' second loan modification request was made as a request for a HAMP modification, I find the pleading that Wells Fargo participates in HAMP sufficient to survive a motion to dismiss. Therefore, the allegations by the Silveiras of Wells Fargo's breach of the implied covenant of good faith and fair dealing in count II of the amended complaint with respect to dual tracking must survive Wells Fargo's motion to dismiss.

**Counts I and II as They Relate to Chapter 93A and Dual Tracking**

The Silveiras allege that Wells Fargo's dual tracking "resulted in a tortious wrongful foreclosure" and is a violation of MASS. GEN.  LAWS ch. 93A. Dual tracking, which consists of

---

[25] The amended complaint alleges that Wells Fargo claims to be involved in "widespread loan modification programs, including the federal government's HAMP program." I also take judicial notice, as I have done previously, that Wells Fargo is a party to a Servicer Participation Agreement with the Federal National Mortgage Association ("Fannie Mae"), as agent for the Treasury Department. *Cruz v. Hacienda Assoc., LLC (In re Cruz)*, 446 B.R. 1, 3 (Bankr. D. Mass. 2011). The Home Affordable Modification Program, known as HAMP, is part of the initiative established under the Troubled Asset Relief Program ("TARP") to implement the Economic Stabilization Act's objective to help families keep their homes and stabilize communities. For a more detailed discussion of HAMP, see *Mitchell v. Wells Fargo Bank, N.A. (In re Mitchell)*, 476 B.R. 33 (Bankr. D. Mass. 2012). Wells Fargo asserts in its motion to dismiss that the loan modification agreement does not purport to be a HAMP modification, a point not challenged by the Silveiras in their opposition to the motion to dismiss. They assert that Wells Fargo's agreeing to consider the loam modification, a fact not alleged in the amended complaint, obligated Wells Fargo to act in good faith.

foreclosing while the HAMP loan modification process is pending,[26] is a violation of HAMP

guidelines which, in certain circumstances, prohibit a mortgagee from proceeding with

foreclosure while a HAMP application is pending.

Even though the Silveiras are neither parties to nor third party beneficiaries of the HAMP

agreement between Wells Fargo and Fannie Mae and thus may not seek to enforce the agreement

directly, *see Mitchell*, 476 B.R. at 51, their claim that Wells Fargo's violation of HAMP

guidelines by engaging in dual tracking constitutes unfair and deceptive conduct that is

actionable under Chapter 93A may have merit, assuming of course that their second application

was a request for modification under HAMP. *Orozco,* 2012 WL 4581092 (D. Mass. Oct. 1,

2012), *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp.2d 255 (D. Mass. 2011),

*Blackwood,* 2011 WL 1561024 (D. Mass. April 22, 2011).

The HAMP guidelines are extensive and those applicable to GSE and non-GSE contracts

are not identical. Which of the guidelines apply also depends upon whether the loan is a

conventional loan or one insured by the Federal Housing Administration. While the guidelines

are not identical, they share the common goal of preventing foreclosure when possible. Based on

the record presently before me I cannot say whether Wells Fargo complied with the guidelines

applicable to it (which I will be able to determine on a more developed record) when it

proceeded with foreclosure while the Silveiras' loan modification application was pending. Thus

the potential violation of Chapter 93A must survive the motion to dismiss.

**Count III: Breach of Contract**

---

[26] The amended complaint alleges several times that Wells Fargo was "considering" the second
loan modification.

To prevail on a breach of contract claim under Massachusetts law one must prove that there was a valid and binding contract, that the counterparty breached the terms of the contract and that the non-breaching party was damaged as a result of the breach. *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995). The Silveiras allege that Wells Fargo breached its contracts (the note, mortgage and first loan modification) with the Silveiras, by failing to give them the § 35A notice.

The Silveiras' promissory note to Wells Fargo provides:

> 7.(B) Default: If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary [of Housing and Urban Development] in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest…. This Note does not authorize acceleration when not permitted by HUD regulations.

The mortgage provides:

> 9. Grounds for Acceleration of Debt.
> (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument….
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

The HUD regulations require a mortgagee to undertake certain actions before accelerating a loan for payment default, including giving a default notice and in many cases attending a face-to-face meeting with the mortgagor before a third month's default. 24 C.F.R. § 203.602 and § 203.604. While these regulations do not provide a mortgagor with a private right of action, *Mitchell v. Chase Home Finance LLC*, 06-CV-2099-K, 2008 WL 623395, at *3 (N.D.

26

Tex. March 4, 2008), if they are incorporated into the various loan documents, as they were in this case, they become enforceable by the parties to the loan documents. *Sinclair v. Donovan*, 11-cv-00010, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011); *Mullins v. GMAC Mortg., LLC*, 09-cv-00704, 2011 WL 1298777 (S.D.W.V. March 31, 2011); *Kersey v. PHH Mortg Corp.*, 682 F. Supp.2d 588, 596-97 (E.D. Va. 2010), *vacated for lack of jurisdiction*, 09cv726, 2010 WL 3222262 (E.D. VA. Aug. 13, 2010); *Shelton v. Wells Fargo Bank, N.A. (In re Shelton),* 481 B.R. 22, 28 n. 19 (Bankr. W.D.Mo. 2012). *See also BAC Home Loans Servicing, LP v. Taylor*, No. 26423, 2013 WL 456890, at *5-6 (Ohio App. 9 Dist. Feb. 6, 2013) (violation of HUD regulations may be asserted defensively in action for judicial foreclosure); *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 733, 724 S.E.2d 196, 200 (2012) ("Borrowers may sue to enforce conditions precedent to foreclosure [namely, HUD's requirement of a face-to-face meeting] even if they were the first party to breach the note secured by a deed of trust through non-payment.") and *Lacy-McKinney v. Taylor, Bean & Whitaker Mortgage Co.*, 937 N.E. 2d 853 (Ind. Ct. of App. 2010) (same). *But see Dixon v. Wells Fargo Bank, N.A.*, 12-10174, 2012 WL 44505052, at 7-8 (E.D. Mich. Sept. 25, 2012) (rejecting breach of contract claim based on HUD regulations incorporated into the contract because right of redemption had expired and Michigan law does not permit breach of contract to lie where there is an independent statutory duty to comply with regulations); *Mitchell v. Chase Home Finance LLC*, 06-cv-2099, 2008 WL 623395, at *3-4 (N.D. Tex. March 4, 2008) (finding no private right of action under HUD regulations and that breach of contract claim was merely a restatement of violations of HUD regulations).

Under Massachusetts law"[i]t is well established that a material breach by one party excuses the other party from further performance under the contract." *Ward v. American Mut.*

27

*Liab. Ins. Co.,* 15 Mass. App. Ct. 98, 100-101, 443 N.E.2d 1342 (1983). Thus it could be argued

that the Silveiras' payment default excused Wells Fargo from its obligations to comply with the

HUD regulations. The United States district court in *Sinclair* roundly rejected this argument. The

court noted:

> Indeed, *the fact that the contract specifically contemplates the Plaintiff falling into
> arrears by imposing obligations on the Defendant to do certain things in the event of
> arrearage prior to commencing foreclosure*—such as having a face-to-face meeting with
> the mortgagor— *suggests that simply falling into arrears on the note is not a material
> breach.* As the Plaintiff Homeowners contend (doc. 16 at 12–13), it indeed would be an
> absurd result if the Lender Defendants were allowed to ignore the contract terms drafted
> to govern their post-default conduct on the grounds that the mortgagors have defaulted.
> We find that the HUD–FHA regulations concerning loss mitigation are enforceable terms
> of the mortgage contract between the parties and that Plaintiffs cannot be denied the
> benefit of these provisions by virtue of the fact of simple default.

*Sinclair*, 2011 WL 5326093, at *7-8 (internal citation omitted and emphasis added by *Sinclair*).

Based on the foregoing, the Silveiras' allegations in count III of the amended complaint

that Wells Fargo breached its contract with them by failing to send them the § 35A must survive

Wells Fargo's motion to dismiss.

**Count V: RESPA**

Count V of the amended complaint alleges a violation of RESPA based upon Wells

Fargo's failure to respond to the QWR.  Attached to Wells Fargo's motion to dismiss, however,

is a copy of a letter from its litigation counsel to the Silveiras' prior counsel responding to the

QWR in which the author questions whether the QWR actually qualifies as a QWR under

RESPA. Although the response is not authenticated by way of affidavit or otherwise, the

Silveiras have accepted that it is a response to the QWR duly sent to their former attorney.

Because the response is an integral part of the amended complaint, I may rely upon it without

having to recharacterize the motion to dismiss as one for summary judgment. Although admitting

28

that the response was received, the Silveiras challenge the response as ineffective under RESPA and thus urge that it be treated as a nullity. Wells Fargo has not addressed this claim.

First, there is no doubt that the Silveiras' letter of April 17, 2012, is a QWR.[27] The letter identifies itself as such and states "[t]he Silveira's [sic] question the loan documentation in connection with the original note and mortgage. They also question the means by which Wells Fargo approached their loan modification and the correct application of payments."  The letter requests various records, including those relating to the application of payments. "Any reasonably stated request for account information can be a [QWR]." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011). *See also  Julien v. Bank of America, N.A. (In re Julien)*, 10-22026, 2013 WL 1124040, at *5 (Bankr. D. Mass. March 18, 2013); *Lacey v. BAC Home Loans Serivcing, LP (In re Lacey)*, 480 B.R. 13, 49 (Bankr. D. Mass. 2012).

Following receipt of the QWR, Wells Fargo was required to do one of three things under RESPA § 2605(e)(2)[28]: "(1) correct the borrower's account and inform the borrower of these

---

[27] 12 U.S.C. § 2605(e)(1)(B) defines a QWR as:

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

[28] 12 U.S.C.A. § 2605(e)(2) requires a servicer to:

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative

corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons why the servicer believes the borrower's account is correct; or (3) investigate and provide a written explanation to the borrower of the reasons why the servicer cannot provide the information that the borrower is requesting." *Sanchez Rodriguez v. R & G Mortgage Corp. (In re Sanchez Rodriguez)*, 03-129 2006 WL 3898313, 2 (Bankr. D.P.R. 2006). Wells Fargo's response was required to include the name and telephone number of an employee or servicer's department who could provide assistance to the Silveira. *Id.*

Wells Fargo's response to the Silveiras' QWR references numerous documents that were enclosed with the response but copies of those documents are not part of the record before me. Based upon the incomplete state of the record, I cannot say that the Silveiras' RESPA count fails to satisfy the *Iqbal* standard. Moreover, I note that Wells Fargo's response does not provide the

---

of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

   (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

   (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Silveiras with the contact information for a Wells Fargo employee or a department which they could contact with follow-up questions. Neither side has addressed whether referring follow-up questions to Wells Fargo's litigation counsel satisfies RESPA's requirements set forth in § 2605(e)(2)(B)(ii) or (C)(ii). I will not address this issue without giving each side an opportunity to do so in the context of summary judgment or trial briefs.  It is enough for now to conclude that count V states a claim against Wells Fargo sufficient to withstand Wells Fargo's motion to dismiss.

**Conclusion and Order**

For the reasons set forth herein, Wells Fargo's motion to dismiss is ALLOWED only as to the claims in count I that the foreclosure is invalid because the Silveiras did not receive notices that were sent or because Wells Fargo did not send a notice of its intent to collect a deficiency and the claims in count II that Wells Fargo's conduct prior to entering into the first loan modification agreement was a breach of the covenant of good faith and fair dealing. The motion is DENIED as to all other claims in counts I, II, III and IV.

By the Court,

Dated: May 2, 2013

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel appearing:

David Baker, Esq.
Boston, MA
For the plaintiffs

Peter J. Haley, Esq.
Heather Bennett, Esq.
Nelson Mullins Riley & Scarborough LLP
Boston, MA
For the defendant Wells Fargo Bank, N.A.